IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                           CASE NO. 8:21-cr-75-MSS-TGW-2

MIGUEL ANGEL DAJOME-REINA,
JOSE LUIS JIMENEZ-BARZOLA,
FRANCISCO JOSE VALVERDE-GOMEZ, and
CARLOS ALBERTO PRCIADO-LANDAZURI,

     Defendants.

_____/

**<u>DEFENDANT JOSE LUIS JIMENEZ-BARZOLA'S
SENTENCING MEMORANDUM</u>**

Defendant, Jose Luis Jimenez-Barzola, through his undersigned

counsel, hereby provides his Sentencing Memorandum in advance of his

September 15, 2021 sentencing hearing.

<u>MEMORANDUM OF LAW</u>

I. *Objection to Absence of Minor Role Downward Adjustment:*

Mr. Jimenez-Barzola's role, when viewed in the context of all

discernible participants in the conspiracy, was clearly a minor one.

According to Count One of the Indictment, the count of conviction, the

grand jury alleged that the four named defendants conspired "with each

other *and with other persons unknown to the Grand Jury*" to distribute

and to possess with intent to distribute five kilograms or more of cocaine. (Doc. 1 at 1) (emphasis added).  Each and every such conspirator, known and unknown, is a criminally responsible "participant" in the offense, as that term is used in USSG § 3B1.2.  Particularly when his role is viewed in the context not only of the acts of the four defendants, but in the context of *all* of the discernible participants in the conspiracy to import more than 1.5 tons of cocaine, Mr. Jimenez-Barzola clearly played a minor role. Accordingly, six levels should be subtracted from his total offense level.

Mr. Jimenez-Barzola objected to ¶ 26 of the initial Presentence Report dated August 2, 2021. Paragraph 26 reflected the absence of a mitigating role downward adjustment pursuant to USSG § 3B1.2(b). Mr. Jimenez-Barzola submits that a 2-level downward adjustment accurately represented his actual role, which was minor, in the case. In addition, he objected to ¶ 26 because of the absence of an additional 4-level reduction under USSG § 2D1.1(a)(5)(iii), which applies in the event a defendant in Mr. Jimenez-Barzola's circumstances receives a mitigating role downward adjustment. (As the government notes in it Sentencing Memorandum, (Doc. 91 at 4), Mr. Jimenez-Barzola incorrectly calculated this reduction as 3 levels. Because his base offense level is 38, the USSG § 2D1.1(a)(5)(iii) reduction would actually be 4 levels). In sum, Mr. Jimenez-Barzola's objection to ¶ 26 asserted that his total offense level should have been reduced by a total of 6 levels.

The August 25, 2021 addendum to the Presentence Report overruled the objection, relying on the commentary accompanying USSG § 3B1.1(2)(b), as well as the Eleventh Circuit's opinion in *United States v. De Varon,* 175 F. 3d 930 (11th Cir. 1999) (*en banc*), and the Eleventh Circuit's unpublished opinion in *United States v. Herrera-Villareal*, ____ Fed. App'x ____, 2016 WL 6123493 (11th Cir., Oct. 20, 2016) (unpublished) Addendum, p. 2.

Mr. Jimenez-Barzola relies instead on all of the factors addressed by the post-*De Varon* authority of *United States v. Cruickshank*, 837 F. 3d 1182 (11th Cir. 2016), which, unlike *Herrera-Villareal*, is published and precedential. According to USSG § 3B1.2(b), a 2-level decrease is appropriate for a minor participant. "Participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.2, comment. (n. 1) (cross-referencing USSG § 3B1.1, comment. (n.1)). In this case, the "participants" in Count One are not limited to the four named defendants, of course, as the grand jury alleged, again, that they conspired "with each other and with other persons unknown to the Grand Jury." Doc. 1, at 2.

The guideline applies to any defendant whose role "makes him substantially less culpable than the average participant in the criminal activity." USSG § 3B1.2, comment. (n.3(A)). The application note provides that the reduction would even apply in circumstances in which the

3

defendant's relevant conduct in a drug trafficking case is based on a drug quantity less than that embraced by the entire conspiracy; here, in contrast, Mr. Jimenez-Barzola's relevant conduct is coextensive with the entire drug quantity involved in the entire conspiracy. The same application note also provides, in circumstances more closely analogous to his case, that the adjustment would apply in a fraud case in which the entire fraud amount is attributable to the defendant even though his personal gain is limited. *Id*.

The government contends in its Sentencing Memorandum that the fact that Mr. Jimenez-Barzola's relevant conduct is coextensive with the entire drug quantity of the conspiracy makes a minor-role reduction less, rather than more, appropriate. (Doc. 91 at 8.)  But the fact that he is held responsible for the entire 1.5 tons of cocaine involved in the smuggling scheme, despite his role as a maritime "mule," favors, not disfavors, a minor-role reduction. (The term "mule" is not intended to denigrate Mr. Jimenez-Barzola. Instead, mariners like him who are hired simply to transport narcotics transnationally on the high seas are closely analogous to the "mules" who are hired only to carry narcotics across land borders on foot.) Holding Mr. Jimenez-Barzola responsible for the entire 1.5 tons of cocaine far overstates his actual culpability, and role in the offense.

The guideline provides list of five non-exhaustive factors that this Court applies in determining whether Mr. Jimenez-Barzola played a minor

4

role. All of the factors weigh in his favor:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

USSG § 3B1.2, comment. (n. 3(C)). According to this application note, this determination is based on a totality of the circumstances and is heavily dependent on the facts of the case. *Id.* Finally, the application note expressly provides that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline," and that the fact "that a defendant performs an essential or indispensable role in the criminal activity is not determinative." *Id.*

In *Cruickshank, supra*, the Eleventh Circuit reversed and remanded for reconsideration of a mariner's contention that a minor role reduction was appropriate. Notably, the defendant was one of only two men aboard a

vessel containing 171 kilograms of cocaine that was intercepted in the Caribbean. 837 F. 3d at 1186. The *Cruickshank* court noted that, in *De Varon*, the Eleventh Circuit rejected a presumption either that drug couriers could categorically never be, or must always be, minor participants. *Id.* at 1192, *citing De Varon,* 175 F. 3d at 940. Instead, the district court must assess all of the facts probative of the defendant's role, including the "'amount of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution.'" *Id.* at 1192, *quoting De Varon, id.* at 945 (noting that the defendant in De Varon was appropriately denied a downward adjustment in part because she was central to the importation scheme and invested her own money to finance the scheme).

The *Cruickshank* court observed that the United States Sentencing Commission relied in part on *De Varon* in amending USSG §3B1.1. *Id.* at 1193. The *Cruickshank* court then noted that, in so doing, the Commission provided that the reason for the amendment was to require courts to "'measure the defendant's role against the relevant conduct for which the defendant is held accountable at sentencing, *whether or not other defendants are charged.*'" *Id., quoting* USSG App. C, Amend. 635, Reason for Amendment (emphasis added). The *Cruickshank* court then noted that the Commission's later amendments to USSG § 3B1.2 – the current language of application note 3(C), quoted above – was also consistent with

6

the Eleventh Circuit's approach. *Id.*

The *Cruickshank* court then evaluated the relevant factors for assessing a role reduction, noting that the defendant programmed the vessel's route, evaded authorities, obstructed the Coast Guard, transported a significant quantity of drugs, expected "premium pay," was only one of two persons aboard a vessel used in international smuggling, and endangered others. *Id.* at 1194 (suggesting that these facts weighed against a reduction for minor role). Even so, the court reversed and remanded after finding that the district court reasoned that the fact of the significant drug quantity alone disqualified the defendant from a minor role reduction. *Id.* The *Cruickshank* court observed that while the drug quantity could itself undermine a minor role finding is certain cases, in that case the drug quantity had to be balanced against such facts as the defendant did not load the drugs on the vessel, "reconstruct" the vessel (to conceal drugs, presumably), fuel the vessel, attend planning meetings for the trip, or "*otherwise appear to have any role concerning the quantity of drugs involved.*" *Id.* at 1195, n. 1 (emphasis added). The *Cruikshank* court observed that the guideline amendments that established the current version of USSG § 3B1.2 established that none of the factors relevant to a minor-role adjustment depended on drug quantity. *Id.* at 1195 (emphasizing new commentary that a defendant who has no proprietary interest in the narcotics and is simply paid for certain tasks should be

considered for a reduction).

Applying the guideline and *Cruickshank* to Mr. Jimenez-Barzola's role, it is clear that he played a minor role in the offense. First, according to the Presentence Report, he had no proprietary interest in the seized cocaine, and was compensated only for certain tasks, namely to help transport narcotics by sea to Mexico. According to ¶ 17, a recruiter approached Mr. Jimenez-Barzola to offer him a job on board a smuggling boat, and would be paid $5,000 upfront, and $30,000.00 upon completion, to transport drugs to Mexico. He agreed, and was taken to a hotel for ten days. *Id.* On the tenth day, he was taken to the boat, where the three codefendants were ready to depart. *Id.*

The PSR provides no basis to conclude that Mr. Jimenez-Barzola:  1) understood the "scope and structure" of the criminal activity; 2) participated in the planning or organizing of the criminal activity; 3) exercised or influenced decision-making authority; 4) performed anything other than menial tasks and having no responsibility or discretion in performing those tasks; or 5) benefited other than marginally from the criminal activity. *See* USSG § 3B1.2, comment. (n. 3(A)). The government estimates that the price of 1.5 tons of cocaine is over $52 million. (Doc. 91, at 9.) Assuming that he would have been paid the entire $35,000.00, Mr. Jimenez-Barzola's compensation would have represented only 0.067% of the value of the smuggled cocaine, that is, 67 cents for every $10,000.00 in

8

profit.   Likewise, in contrast to the defendant in *Cruickshank*, Mr. Jimenez-Barzola did not program the vessel's route, evade authorities, obstruct the Coast Guard, expect "premium pay," or endanger others. *See Cruickshank*, 837 F. 3d at 1193. Conversely, like the defendant in *Cruickshank*, the Presentence Report does not reflect that Mr. Jimenez-Barzola loaded the drugs on the vessel, "reconstructed" the vessel (to conceal drugs, presumably), fueled the vessel, attended planning meetings for the trip, or otherwise appear to have any role relating to establishing the quantity of drugs involved. *See Cruickshank*, 837 F. 3d at 1195, n. 1.

Although the other participants in the criminal activity, which include the other conspirators known and unknown to the grand jury, are not "identifiable" by name, they are "discernible." *See De Varon*, 175 F. 3d at 944 (participants must be identifiable *or* discernible). Certainly, other *discernible* participants in the conspiracy must include, but are not limited to: all of the individuals having an ownership interest in the cocaine in its source nation; individuals trusted to manage the transportation, over land and overseas, of the cocaine; the recipients of the planned cocaine delivery in Mexico; and the managers of the drug trafficking organizations responsible for purchasing the cocaine and distributing it in North America. When viewed in the proper context, Mr. Jimenez-Barzola's role is indisputably minor, if not minimal.

9

II. *Motion for Variance*

Mr. Jimenez-Barzola also moves for a downward variance from the advisory Sentencing Guidelines. As the Presentence Report reflects at ¶ 78, a potential basis for a downward adjustment pursuant to 18 U.S.C. § 3553(a) is Mr. Jimenez-Barzola's personal characteristics and demographics, especially his "extremely impoverished lifestyle, lack of education, minimal employment opportunities, family ties and responsibilities, and to avoid unwarranted sentencing disparities." His life has been poverty stricken. He completed only the sixth grade, PSR ¶ 58, and has made his living as a fisherman. *Id.* at ¶ 60. He has supported five children on his subsistence income. *Id.* at ¶ 48.  In short, Mr. Jimenez-Barzola was exploited because of his poverty as an expendable cog in an international drug trafficking organization. A variance is clearly appropriate.

WHEREFORE, defendant Jose Luis Jimenez-Barzola provides his Sentencing Memorandum, and requests both a 6-level downward adjustment to his advisory Guidelines sentence to reflect his minor role when compared with all discernible participants in the conspiracy, and an additional downward variance from the advisory Guidelines.

Respectfully submitted,

FARMER & FITZGERALD, P.A.

/s/ *Matthew Farmer*
Matthew P. Farmer, Esq.
Fla. Bar No. 0793469
1560 W. Cleveland St.
Tampa, FL 33606
(813) 228-0095
FAX (813) 224-0269
MattFarmer1@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 1st day of September, 2021:

AUSA Lauren Stoia
Lauren.Stoia@usdoj.gov

Nicole Hardin, Esq.
Nicole_Hardin@fd.org

Angelo Ferlita, Esq.
ferlitalaw@yahoo.com

Summer Rae Goldman, Esq.
summer@goldmanwetzel.com

/s/ *Matthew Farmer*
COUNSEL

11